UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CUONG HUY DAO,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>P. TABOR, et al.,<br><br>　　　　　Defendants. | No. 2:22-cv-00846 TLN CSK P<br><br>ORDER AND FINDINGS AND RECOMMENDATIONS |

Introduction

　　　　Plaintiff is a state prisoner, proceeding without counsel, with a civil rights action pursuant to 42 U.S.C. § 1983. Pending before the court is defendants' summary judgment motion. (ECF No. 80.) For the reasons stated herein, this Court recommends that defendants' summary judgment motion be granted in part and denied in part.

Legal Standards for Summary Judgment

　　　　Summary judgment is appropriate when it is demonstrated that the standard set forth in Federal Rule of Civil Procedure 56 is met. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings,

1

> depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P. 56(c).) "Where the nonmoving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 Advisory Committee Notes to 2010 Amendments (recognizing that "a party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact"). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

Consequently, if the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of such a factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436

(9th Cir. 1987), overruled on other grounds as stated in Flood v. Miller, 35 F. App'x 701, 703 n.3 (9th Cir. 2002).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 630. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) Advisory Committee's Note on 1963 amendments).

In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586 (citation omitted).

By order and notice filed June 12, 2023 and February 21, 2024 (ECF Nos. 40, 80-12), plaintiff was advised of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

///
///
///

Plaintiff's Claims

This action proceeds on plaintiff's original verified complaint filed February 8, 2022 as to defendants California State Prison-Sacramento ("CSP-Sac") Correctional Officers Tabor and Hibbard. (ECF No. 1.) Plaintiff alleges that on February 5, 2020, defendants Tabor and Hibbard used excessive force against plaintiff in violation of the Eighth Amendment.[1] (Id. at 2-3.)

Plaintiff alleges that prior to the February 5, 2020 incident, plaintiff had been single celled for about three years. (Id. at 3.) Plaintiff alleges that his single cell status was based on prior assaults by Black inmates. (Id. at 4.) On February 4, 2020, the Institution Classification Committee ("ICC") denied plaintiff single cell status. (Id. at 3-4.) Plaintiff refused double cell housing and remained at Facility B7 in single cell housing. (Id. at 4.)

On February 5, 2020, at about 7 a.m., a correctional officer in Facility B7 told plaintiff that he would be single celled in Facility B5. (Id. at 5.) Plaintiff agreed to the move to Facility B5. (Id.) When plaintiff arrived at Facility B5 at around 9:20 a.m., plaintiff learned that he would be double celled. (Id.) Plaintiff informed defendants Tabor and Hubbard of his concerns about being double celled. (Id.) Defendants became agitated and assumed a boxing stance to fight plaintiff. (Id.) Plaintiff asked to speak to the sergeant. (Id.)

Defendants handcuffed plaintiff, without locking the cuff, and put plaintiff in the rotunda holding cage. (Id. at 5-6.) Plaintiff saw defendant Tabor talking on the phone. (Id. at 6.) Several minutes later, defendants Tabor and Hubbard approached plaintiff. (Id.)

Plaintiff told defendants that he did not want to be double celled. (Id.) Plaintiff told defendants that he had been told he would be single celled. (Id.) Defendants responded, "No. You going to be double cell housed and you going in there." (Id.) Plaintiff responded, "I have safety issues. Write me up and take me to the hole." (Id.) Defendants responded, "No." (Id.) Defendants unlocked the holding cage, pulled plaintiff out and forced plaintiff toward the B-pod unit. (Id.) Defendants then assaulted plaintiff with their hands, arms, legs and body. (Id.)

---

[1] Plaintiff's complaint also raised a failure-to-protect claim. On May 11, 2023, the court dismissed plaintiff's failure-to-protect claim for failure to exhaust administrative remedies. (ECF No. 38.)

Defendant Tabor slammed plaintiff on the cement floor, repeatedly punched plaintiff and slammed plaintiff's face to the floor.  (Id. at 6-7.)  Defendant Tabor pressed hard to tighten the left cuff on plaintiff's wrist so that it cut into plaintiff's flesh and cut off circulation.  (Id. at 7.)  Defendant Tabor then violently twisted and tore plaintiff's left wrist, knee and ankle, causing massive pain and injury.  (Id.)

Defendant Hubbard slammed plaintiff to the floor, pressed hard to tighten the right cuff on plaintiff's wrist so it cut into plaintiff's flesh and cut off circulation.  (Id.)  Defendant Hubbard punched plaintiff's body repeatedly, then twisted and tore plaintiff's right wrist, knee and ankle, causing massive pain and injury.  (Id.)

Defendants Tabor and Hubbard pinned plaintiff on the ground and suppressed plaintiff's breathing.  (Id.)  Plaintiff could not breathe and choked for air.  (Id.)

Defendant Tabor put a spit mask over plaintiff's face to hide plaintiff's facial injuries.  (Id. at 8.)  Plaintiff could not walk or stand so Correctional Officers Teragawa and Barrios put plaintiff in a wheelchair and rolled plaintiff to the Facility B sally port holding cage.  (Id.)

Relevant Legal Standards

*Legal Standard for Eighth Amendment Claim Alleging Excessive Force*

"In its prohibition of 'cruel and unusual punishments,' the Eighth Amendment places restraints on prison officials, who may not ... use excessive physical force against prisoners." Farmer v. Brennan, 511 U.S. 825, 832 (1994).  "[W]henever prison officials stand accused of using excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry is ... whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  Hudson v. McMillian, 503 U.S. 1, 6-7 (1992).

When determining whether the force was excessive, the court looks to the "extent of injury suffered by an inmate ..., the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'"  Id. at 7 (quoting Whitley v. Albers, 475 U.S. 312, 321 (1986)).  While de minimis uses of physical force generally do not implicate the Eighth Amendment, significant injury need not be evident in the context of an

5

excessive force claim, because "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." Id. at 9.

*Legal Standard for Qualified Immunity*

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Qualified immunity shields an officer from liability even if his or her action resulted from "'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" Id. (quoting Groh v. Ramirez, 540 U.S. 551, 567 (2004)).

"Determining whether officials are owed qualified immunity involves two inquiries: (1) whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the official's conduct violated a constitutional right; and (2) if so, whether the right was clearly established in light of the specific context of the case." Robinson v. York, 566 F.3d 817, 821 (9th Cir. 2009) (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)). A right is "clearly established" when, "at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).

The qualified immunity analysis is separate from the Eighth Amendment excessive force analysis. See Marquez v. Gutierrez, 322 F.3d 689, 691 (9th Cir. 2003). Thus, a guard can do an act which would violate an inmate's Eighth Amendment right but still be entitled to qualified immunity if a reasonable officer in his position would have believed that his response was a good faith effort to restore discipline. Id. at 692-93. Courts must be "hesitant 'to critique in hindsight decisions necessarily made in haste, under pressure, and frequently without the luxury of a second chance.'" 322 F.3d at 692 (quoting Whitley v. Albers, 475 U.S. 312, 320 (1986)).

///

///

Undisputed and Disputed Facts

Defendants' summary judgment motion includes a statement of 26 undisputed facts. (ECF No. 80-11.) With some modifications, this court finds that defendants' undisputed facts nos. 1, 2, 4-7, 9, 12, 13, 18-20, 22, 25, 26 are undisputed. Fact no. 3 includes irrelevant facts, so only a portion of fact no. 3 is deemed undisputed for purposes of this motion. This court finds that fact nos. 8, 14-17, and 24 are partially undisputed, and partially disputed. This court finds that defendants' undisputed facts nos. 10, 11, 21 and 23 are disputed.

*Undisputed Facts*

1. As a result of defendants' alleged use of excessive force against him, plaintiff alleges that he was unable to stand and suffered bleeding and bruising to his wrists and ankles, swelling to his head, face and knees. (ECF No. 80-11 at 2 (defendants' statement of undisputed facts); ECF No. 86-1 at 5-8 (plaintiff's response).)

2. At all relevant times, plaintiff was a California state prison inmate, incarcerated at CSP-Sac. (ECF No. 80-11 at 2; ECF No. 86-1 at 8.)

3. As of the date of the alleged incident on February 5, 2020, plaintiff was classified as a level-IV maximum security inmate. (ECF No. 80-11 at 2; ECF No. 86-1 at 8).)

   In undisputed fact no. 3, defendants also state that plaintiff has received fifteen rules violation reports for battery on a peace officer and three rules violation reports for battery on a prisoner. (ECF No. 80-11 at 2.) Defendants state that plaintiff was found guilty following disciplinary hearings for all eighteen offenses. (Id.) Defendants have not demonstrated the relevance of plaintiff's disciplinary convictions to their summary judgment motion. To the extent defendants argue that plaintiff's disciplinary convictions undermine plaintiff's credibility, the court may not engage in credibility determinations in ruling on a summary judgment motion. Manley v. Rowley, 847 F.3d 705, 711 (9th Cir. 2017) (citation omitted). Accordingly, this Court finds that evidence of plaintiff's disciplinary convictions is not relevant to defendants' summary judgment motion.

4. Defendants K. Hibbard and P. Tabor were employed as correctional officers at CSP-

1  Sac at all relevant times. (ECF No. 80-11 at 2; ECF No. 86-1 at 8.)

2  5. On February 4, 2020, plaintiff was released early from an eight-month long Security Housing Unit term imposed for threatening a staff member and was cleared for a double cell housing assignment. (ECF No. 80-11 at 2; ECF No. 86-1 at 8-9.)

6. On February 5, 2020, at approximately 9:30 a.m., while performing their duties as building B5 floor officers, defendants observed fellow officers escort plaintiff to his new housing facility in the same building. The escorting officers relinquished control of plaintiff to defendants in the B5 rotunda. Plaintiff appeared to be agitated, stating he was not going to cell 214. (ECF No. 80-11 at 2; ECF No. 86-1 at 10-11.)

7. Defendant Hibbard told plaintiff that cell 214 was his housing assignment. Plaintiff told defendant Hibbard that he was not taking a cellie. Defendant Hibbard told plaintiff that he could go to the recreation yard and find a new cellmate if he wished. (ECF No. 80-11 at 2; ECF No. 86-11 at 11.)

8. Undisputed portion: Defendants ordered plaintiff to go to his cell, but he refused. (ECF No. 80-11 at 2; ECF No. 86-1 at 12.)

Disputed portion: In fact no. 8, defendants also claim that plaintiff raised his voice and yelled, "Fuck that, I'm not going in there." (ECF No. 80-11 at 2.) Plaintiff disputes that he yelled profanity at defendants. (ECF No. 86-1 at 12.)

9. Defendant Tabor ordered plaintiff to submit to handcuffs. Plaintiff complied. (ECF No. 80-11 at 3; ECF No. 86-1 at 12-14.)

10. Disputed.

11. Disputed.

12. Plaintiff admits that when they arrived at the new cell, plaintiff "backed away." (ECF No. 80-11 at 3; ECF No. 86-1 at 16.)

13. Defendants perceived plaintiff's actions as an imminent threat. (ECF No. 80-11 at 3.) In disputed fact no. 11, defendants describe plaintiff's actions which they perceived as an imminent threat: Suddenly, and without provocation, plaintiff widened his legs and stance, lowered his body and stated, "I'm not going anywhere." (Id.) Plaintiff then

8

|   |   |
|---|---|
| 1 | violently attempted to pull away from defendant Tabor's grasp by thrashing his body |
| 2 | from side to side. (Id.) In his response to undisputed fact no. 11, plaintiff disputes |
| 3 | that he engaged in this conduct. (ECF No. 86-1 at 15-16.) However, plaintiff admits |
| 4 | he backed away when they arrived at the new cell. (Id. at 16.) As discussed in the |
| 5 | analysis of plaintiff's claim alleging that defendants used excessive force when they |
| 6 | took plaintiff to the ground, plaintiff's actions created a threat to safety under either |
| 7 | defendants' or plaintiff's descriptions of plaintiff's behavior. |

14. Undisputed portion: Defendant Hibbard ordered plaintiff to get down and stop resisting. Plaintiff refused to enter the cell. (ECF No. 80-11 at 3.)

   Disputed portion: In response to undisputed fact no. 14, plaintiff does not dispute that defendant Hibbard ordered him to get down and stop resisting. (ECF No. 86-1 at 18.) Plaintiff claims that defendant Hibbard made these statements to cover up defendants' actions. (Id.) Plaintiff disputes that he disobeyed the order to stop resisting, although he does not dispute that he refused to enter the cell. (Id.)

15. Defendant Tabor forced plaintiff to the ground. (ECF No. 80-11 at 3; ECF No. 86-1 at 19.)

   Disputed portion: The parties use different language to describe how defendant Tabor forced plaintiff to the ground. In his declaration, defendant Tabor states that he forced plaintiff to the ground by pulling plaintiff in a downward motion, with his right hand on plaintiff's left bicep and his left hand on plaintiff's left shoulder. (ECF No. 80-10 at 2.) Plaintiff claims that defendant Tabor slammed him to the floor. (ECF No. 86-1 at 19.)

16. Defendant Hibbard forced plaintiff to the ground. (ECF No. 80-11 at 3; ECF No. 86-1 at 20.)

   Disputed portion: The parties use different language to describe how defendant Hibbard forced plaintiff to the ground. In his declaration, defendant Hibbard states that he placed his right hand on plaintiff's right shoulder and utilized his own strength and body weight to force plaintiff to the ground in a prone position.

9

(ECF No. 80-1 at 2.)  Plaintiff claims that defendant Hibbard slammed him to the floor.  (ECF No. 86-1 at 20.)

17. Undisputed portion:  Defendant Hibbard called in a request for a code one response for a resistive inmate.  Defendant Tabor placed plaintiff in a spit net.  (ECF No. 80-11 at 3; ECF No. 86-1 at 21-22.)

    Disputed portion: The parties dispute why the spit net was placed on plaintiff. (Id.)

18. Defendants relinquished custody of plaintiff to responding staff.  (ECF No. 80-11 at 3; ECF No. 86-1 at 22.)

19. Plaintiff was placed in leg restraints and placed in a wheelchair.  (ECF No. 80-11 at 3; ECF No. 86-1 at 23.)

20. Defendants performed three "inmate welfare checks" on plaintiff when plaintiff was secured in a holding cell.  (ECF No. 80-11 at 3; ECF No. 86-1 at 23-24).

21. Disputed.

22. Following the use-of-force incident, registered nurse J. Saji performed a medical examination of plaintiff.  (ECF No. 80-11 at 4; ECF No. 86-1 at 26.)

23. Disputed.

24. Nurse Saji's report states that plaintiff complained of pain in his right knee and both ankles.  (ECF No. 80-11 at 4; ECF No. 86-1 at 27.)

    Disputed portion:  In response to undisputed fact no. 24, plaintiff claims that he suffered additional injuries not listed in Nurse Saji's report.  (ECF No. 86-1 at 27.)

25. Nurse Saji ordered x-rays of plaintiff's right knee and both ankles, which indicated mild soft tissue swelling to plaintiff's ankles but no evidence of fracture or dislocation. (ECF No. 80-11 at 4; ECF No. 86-1 at 28).

26. Additional x-rays taken on February 25, 2020 indicated that plaintiff suffered no dislocation or fracture to his left knee.  (ECF No. 80-11 at 4; ECF No. 86-1 at 28).

///

*Disputed Facts*

    10, 11: This Court finds that the events immediately preceding the alleged incident of excessive force, discussed in defendants' undisputed facts nos. 10 and 11, are disputed. In undisputed fact no. 10, defendants state that defendant Tabor placed his right hand on plaintiff's left bicep as defendants attempted to escort plaintiff to his new cell. (ECF No. 80-11 at 3.) In undisputed fact no. 11, defendants state that suddenly and without provocation, plaintiff widened his legs and stance, lowered his body and stated, "I'm not going anywhere." (Id.) Plaintiff then violently attempted to pull away from defendant Tabor's grasp by thrashing his body from side to side. (Id.)

    In response to undisputed fact nos. 10 and 11, plaintiff refers to his declaration submitted in support of his opposition. In his declaration, plaintiff states that defendants returned to the holding cell, grabbed his arm and yanked him out. (ECF No. 86 at 5.) Defendants then pulled, pushed and dragged plaintiff to the B-section entrance. (Id.) Defendants stated, "You don't have a fucking choice. You fucking go in there now." (Id.) In fear for his safety, plaintiff backed away from B-entrance. (Id. at 6.) Defendants then slammed plaintiff to the floor. (Id. at 6.)

    21. This Court finds that whether defendants used excessive force against plaintiff, is disputed. In undisputed fact no. 21 states that defendants had no intention of harming plaintiff during the escort. (ECF No. 80-11 at 4.) Defendants state that any force they used on plaintiff was not to harm plaintiff but to protect themselves and other officers from injury. (Id.) As discussed herein, whether defendants used excessive force after they brought plaintiff to the ground is disputed.

    23. This Court finds that the nature and extent of plaintiff's injuries after the incident are disputed. In undisputed fact no. 23, relying on the report of Nurse Saji, defendants state that plaintiff was able to walk with a steady gait, had no visible bruising, swelling, abrasions, bleeding, cuts, slashes or any other injury that

11

required immediate medical attention.² (ECF No. 80-11 at 4.) Plaintiff disputes that he was able to walk with a steady gait after the incident. (ECF No. 86-1 at 27.) In his declaration filed in support of his opposition, plaintiff states that he was placed in a wheelchair after the incident because he could not stand. (ECF No. 86 at 8.) Plaintiff also claims that Nurse Saji did not accurately record his injuries in their report. (ECF No. 86 at 11.) This Court observes that in his verified complaint, plaintiff alleges that his face, wrists, knees and ankles were swollen and sore for two weeks after the incident.³ (ECF No. 1 at 11.)

<u>Clarification of Plaintiff's Claims</u>

In the complaint, plaintiff claimed that defendants used excessive force when they slammed plaintiff to the ground and then assaulted plaintiff. Defendants' summary judgment motion addresses these claims. At his deposition and in his declaration submitted in support of the opposition, plaintiff appears to raise a new excessive force claim based on the allegations that defendants forcibly removed plaintiff from the holding cell, by grabbing his arm and yanking him out, and then defendants pulled, pushed and dragged plaintiff to the entrance of the new cell. (ECF No. 86 at 5; plaintiff's deposition at 45:7-9, 12-14.)

In the complaint, plaintiff alleged that defendants pulled him out of the holding cell and forced plaintiff toward B-Pod unit after plaintiff refused the order to go to the new cell. (ECF No. 1 at 6.) In the complaint, plaintiff did not allege that defendants grabbed him by his arm, yanked him out of the holding cell, and then pulled, pushed and dragged plaintiff to the entrance of the new cell. This Court finds that the allegations in the complaint did not put defendants on notice that plaintiff raised an excessive force claim based on how defendants removed plaintiff from the holding cell and transported plaintiff to the new cell. <u>Starr v. Baca</u>, 652 F.3d 1202, 1216 (9th Cir. 2011) (the complaint must contain sufficient allegations of underlying facts to give fair notice and

---

² This Court is puzzled by Nurse Saji's order for x-rays of plaintiff's right knee and both ankles and Nurse Saji's record stating that plaintiff was ambulatory with a steady gait. (ECF No. 80-3 at 4.)

³ "A [p]laintiff's verified complaint may be considered as an affidavit in opposition to summary judgment if it is based on personal knowledge and sets forth specific facts admissible in evidence." <u>Lopez v. Smith</u>, 203 F.3d 1122, 1132 n. 14 (9th Cir. 2000).

to enable the opposing party to defend itself effectively).  Plaintiff may not amend his complaint by way of his opposition to defendants' summary judgment motion to raise a new excessive force claim.  Pickern v. Pier 1 Imports (U.S.) Inc., 457 F.3d 963, 968-69 (9th Cir. 2006) (refusing to consider new allegations raised for first time in opposition to motion for summary judgment motion).

In an abundance of caution, this Court finds that plaintiff's allegations in the complaint that defendants pulled him out of the holding cell and forced him toward B-Pod unit, as plead, do not state a potentially colorable excessive force claim.  Although plaintiff disagreed with the order to go to the new cell, plaintiff was required to obey the order.  Inmates are not allowed to pick and choose orders they will obey.  Correctional officers are not required to concede to the demands of inmates or wait them out in order to avoid the use of force.  Soto v. Dickey, 744 F.2d 1260, 1267 (7th Cir. 1984) ("Orders given must be obeyed.  Inmates cannot be permitted to decide which orders they will obey, and when they will obey them.  Someone must exercise authority and control.").

After plaintiff refused the order to go to the new cell, defendants were entitled to use reasonable force.  White v. Roper, 901 F.2d 1501, 1507 (9th Cir. 1990) (defendants entitled to use reasonable force when inmate disobeyed order to enter cell occupied by another inmate); Uerling v. Piccinini, 238 F.3d 433 (9th Cir. 2000) (unpublished) (because the plaintiff admitted that he refused to comply with orders to be handcuffed and removed from his cell, and physically resisted correctional officers attempting to remove him from his cell, the force used to extract and restrain him was not unreasonable); Turner v. Graff, 2012 WL 3656492, *4 (N.D. Cal. Aug. 17, 2012) ("Even if plaintiff's resistance did not pose a physical threat to the officers, it created a need for them to apply reasonable force to control plaintiff in order to maintain discipline and order."); Manriquez v. Huchins, 2011 WL 6293962, *3 (E.D. Cal. Dec. 15, 2011) ("An inmate's failure to comply with prison officials would create a need for the use of force to gain compliance and restore order."), report and recommendation adopted by, 2012 WL 94475 (E.D. Cal. Jan. 11, 2012); Stevenson v. Harmon, 2009 WL 667198, *15 n.9 (S.D. Cal. March 13, 2009), affirmed by, 406 F. App'x 97 (9th Cir. 2010) ("When an inmate refuses to comply with the order of a staff

member, a threat may be reasonably perceived by staff."). Plaintiff's allegations in the complaint that defendants pulled him out of the holding cell and forced him to the new cell after plaintiff refused the order to go to the new cell, as plead, do not demonstrate that defendants used excessive force in violation of the Eighth Amendment. Accordingly, this claim should be dismissed. 28 U.S.C. § 1915(e)(2) (notwithstanding any filing fee that may have been paid, the court shall dismiss case at any time if it determines that it fails to state claim upon which relief may be granted).

Did Defendants Use Excessive Force When They Allegedly Slammed Plaintiff to the Ground?

As stated above, prison officials may use reasonable force when inmates disobey orders. Defendants argue that they used reasonable force in bringing plaintiff to the ground after plaintiff suddenly widened his leg stance, stated, "I'm not going anywhere," then violently pulled away from defendant Tabor's grasp. Based on defendants' description of plaintiff's behavior, this Court finds that defendants used reasonable force by bringing plaintiff to the ground in response to the safety threat posed by plaintiff.

In his opposition, plaintiff disputes defendants' description of his allegedly threatening behavior, but admits that he resisted the order to enter the new cell. As discussed above, it is undisputed that plaintiff backed away. At his deposition, plaintiff testified, "So when I got to the entrance, I said, 'I don't want to go.' And I backed away from the entrance. And that's when they slammed me." (Plaintiff's deposition at 46:14-17.) This Court understands plaintiff's use of the word slamming to mean that defendants brought plaintiff to the ground quickly and with force. This Court finds that defendants alleged slamming of plaintiff to the ground was a reasonable use of force in response to the safety threat posed by plaintiff's behavior as described in plaintiff's deposition testimony. Liberty Lobby, 477 U.S. at 255 (on summary judgment, the evidence of the opposing party is to be believed). Therefore, plaintiff did not meet his summary judgment burden of demonstrating a material dispute of fact because a reasonable jury could not return a verdict in plaintiff's favor based on plaintiff's evidence. Celotex, 477 U.S. at 322-23 (a dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party; if the nonmoving party fails to make this showing, "the

moving party is entitled to a judgment as a matter of law."). Accordingly, defendants' motion for summary judgment as to this claim should be granted.

Did Defendants Use Excessive Force After Plaintiff Was On the Ground?

Citing undisputed facts nos. 17-19, defendants argue that once plaintiff was on the ground, he stopped resisting; accordingly, defendants did not use any additional force and relinquished control of plaintiff to responding staff. (ECF No. 80 at 12.) However, undisputed facts nos. 17-19 do not state that once plaintiff was on the ground, defendants did not use any additional force. Defendants' declarations also do not directly state that once plaintiff was on the ground, they did not use additional force. (ECF Nos. 80-1, 80-10.) The declaration of witness Correctional Officer Ogbeide, submitted by defendants in support of the summary judgment motion, also does not directly address whether he witnessed defendants use additional force after plaintiff was on the ground. (ECF No. 80-2.)

By failing to present evidence directly supporting their claim that they did not use additional force against plaintiff after he was on the ground, defendants arguably failed to meet their initial summary judgment burden of demonstrating the absence of a genuine issue of material fact as to plaintiff's claim that they assaulted him after he was on the ground and no longer resisting. Celotex, 477 U.S. at 323. However, assuming defendants met their initial summary judgment burden as to this claim, this court finds that defendants are not entitled to summary judgment due to disputed material facts.

In plaintiff's verified complaint and declaration filed in support of his opposition, plaintiff alleges that defendant Tabor repeatedly punched, elbowed and slammed plaintiff's face into the floor after plaintiff was on the ground. (ECF 1 at 6-7; ECF No. 86 at 6.) In his verified complaint and declaration filed in support of his opposition, plaintiff alleges that defendant Tabor violently twisted and tore plaintiff's left wrist, knee and ankles, causing massive pain. (ECF No. 1 at 7; ECF No. 86 at 6.) In his verified complaint and declaration filed in support of his opposition, plaintiff alleges that defendant Hibbard punched plaintiff's face and body repeatedly, twisted and tore plaintiff's right wrist, knee and ankle, causing massive pain and injuries. (ECF No. 1 at 7; ECF No. 86 at 6-7.) In his verified complaint, plaintiff also alleges that defendants

15

used their body weight to suppress plaintiff's breathing.  (ECF No. 1 at 7.)  Plaintiff claims that he did not resist after defendants brought him to the ground.  (ECF No. 86 at 6.)

Plaintiff's claims that defendants slammed his face into the ground, hit his face and body, twisted his wrists, knees and ankles and suppressed his breathing after they brought plaintiff to the ground when plaintiff was not resisting suggest that this force was not applied for the purpose of maintaining or restoring order.  Therefore, whether defendants used excessive force against plaintiff after they brought him to the ground is a disputed material fact.

Plaintiff also claims that after defendants brought him to the ground, defendants applied the handcuffs so tightly that the cuff bit into his flesh, causing pain and cutting off circulation.  (ECF No 1 at 7, ECF No. 86 at 6.)  In his complaint, plaintiff claims that defendants put handcuffs on him while he was in the holding cell but did not lock the cuff.  (ECF No. 1 at 5.)  In their declarations, defendants state that defendant Tabor applied handcuffs to plaintiff.  (ECF No. 80-1 at 2; ECF No. 80-10 at 2.)  In the summary judgment motion, defendants do not directly address plaintiff's claims that they did not lock the handcuffs until plaintiff was on the ground and that they applied the handcuffs too tightly.

In cases where tight handcuffs were found to constitute unreasonable force, "'factors in addition to the tight handcuffing were shown including other forms of abusive conduct with the handcuffing (such as physical violence), and/or plaintiff's visible pain or complaints of pain, advice to the defendant of pre-existing injuries, and/or request(s) that the defendant remove or loosen the handcuffs.'"  Loftis v. Arisco, 2023 WL 5427943, at *2 (E.D. Cal. Aug. 23, 2023) (quoting Taylor v. Cesarez, 2018 WL 6136154, at *6 (C.D. Cal. June 27, 2018)); see also Leon v. Celaya, 2022 WL 1308123, at *9 (S.D. Cal. May 2, 2022), report and recommendation adopted, 2022 WL 3700560 (S.D. Cal. Aug. 8, 2022) ("In general, in cases where tight handcuffing was found to constitute excessive force, the plaintiff was in visible pain, repeatedly asked the defendant to remove or loosen the handcuffs, had pre-existing injuries known to the defendant, or alleged other forms of abusive conduct by the defendant.").

This Court finds that plaintiff's allegations that defendants tightened the handcuffs so tightly that they cut into his flesh, caused pain and cut off circulation, suggests that the handcuffs

were not applied in a good-faith effort to maintain or restore discipline. Accordingly, this Court finds that whether defendants used excessive force when they applied handcuffs to plaintiff is a disputed material fact.

Defendants argue that plaintiff's lack of significant injuries confirms that the force used was not excessive. The Supreme Court has rejected defendants' argument that a lack of significant injury confirms that the force used was not excessive.

> [In Hudson v. McMillian, supra, 503 U.S. 1], this Court rejected the notion that "significant injury" is a threshold requirement for stating an excessive force claim. The "core judicial inquiry," we held, was not whether a certain quantum of injury was sustained, but rather "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." 503 U.S. at 7; see also Whitley v. Albers, 475 U.S. 312, 319–321 (1986). "When prison officials maliciously and sadistically use force to cause harm," the Court recognized, "contemporary standards of decency always are violated ... whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." Hudson, 503 U.S. at 9; see also id. at 13–14 (Blackmun, J., concurring in judgment) ("The Court today appropriately puts to rest a seriously misguided view that pain inflicted by an excessive use of force is actionable under the Eighth Amendment only when coupled with 'significant injury,' e.g., injury that requires medical attention or leaves permanent marks").
>
> This is not to say that the "absence of serious injury" is irrelevant to the Eighth Amendment inquiry. Id. at 7. "[T]he extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation." Ibid. (quoting Whitley, 475 U.S. at 321). The extent of injury may also provide some indication of the amount of force applied. As we stated in Hudson, not "every malevolent touch by a prison guard gives rise to a federal cause of action." 503 U.S. at 9. "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Ibid. (some internal quotation marks omitted). An inmate who complains of a "push or shove" that causes no discernible injury almost certainly fails to state a valid excessive force claim. Ibid. (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir.1973)).
>
> Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury. Accordingly, the Court concluded in Hudson that the supposedly "minor" nature of the injuries "provide[d] no basis for dismissal of [Hudson's] § 1983 claim" because "the blows directed

> at Hudson, which caused bruises, swelling, loosened teeth, and a cracked dental plate, are not de minimis for Eighth Amendment purposes." 503 U.S. at 10.

Wilkins v. Gaddy, 559 U.S. 34, 37-38 (2010).

Accordingly, defendants are not entitled to summary judgment on the grounds that plaintiff did not suffer significant injury. Moreover, as discussed previously, the nature and extent of plaintiff's injuries is disputed.

In the reply to plaintiff's opposition, defendants argue that plaintiff's claims of injuries should be disregarded because they are not supported by any evidence. Defendants cite Scott v. Harris, 550 U.S. 372, 380 (2007), for the proposition that, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonably jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." This Court finds that plaintiff's allegations regarding his injuries do not render his claims of excessive force unbelievable. The trier of fact should consider the credibility of plaintiff's claims regarding his injuries. Manley, 847 F.3d at 711 (court may not make credibility determinations on summary judgment).

For the reasons discussed above, this Court recommends that defendants' summary judgment motion be denied as to plaintiff's claim that defendants used excessive force in violation of the Eighth Amendment after bringing plaintiff to the ground.

Qualified Immunity

Defendants argue that they are entitled to qualified immunity. This Court first considers whether defendants are entitled to qualified immunity as to plaintiff's claim alleging that they used excessive force when they slammed plaintiff to the ground. Taking the facts in the light most favorable to plaintiff, for the reasons previously discussed, this Court finds that defendants did not use excessive force in violation of the Eighth Amendment when they slammed plaintiff to the ground. Assuming defendants violated the Eighth Amendment when they slammed plaintiff to the ground, this Court finds that at the time of the February 5, 2020 incident, the law was not clearly established so that a reasonable officer would understand that slamming plaintiff to the ground, after plaintiff disobeyed the order to enter the new cell by backing away and stating that

he did not want to go in, was excessive force in violation of the Eighth Amendment. See Roper, 901 F.3d at 1507; Uerling, 238 F.3d 433. Accordingly, defendants are entitled to qualified immunity as to plaintiff's claim alleging that they used excessive force when they slammed him to the ground.

This Court next considers whether defendants are entitled to qualified immunity as to plaintiff's claim that they used excessive force after they brought plaintiff to the ground. Taking the facts in the light most favorable to plaintiff, this court finds that defendants used excessive force in violation of the Eighth Amendment after they brought plaintiff to the ground when defendants allegedly slammed plaintiff's face into the floor, hit plaintiff's face and body, twisted plaintiff's wrists, knees and ankles, applied handcuffs so tightly that they cut plaintiff's wrists, caused pain and cut off circulation, and suppressed plaintiff's breathing, all when he was no longer resisting. This Court further finds that at the time of the February 5, 2020 incident, the law was clearly established so that a reasonable correctional officer would understand that engaging in this conduct violated the Eighth Amendment. Hudson v. McMillian, 503 U.S. at 6-7. For these reasons, defendants are not entitled to qualified immunity as to plaintiff's claim that they used excessive force after plaintiff was on the ground.

Plaintiff's Motion For Extension of Time to File A Sur-reply (ECF No. 92)

On May 10, 2024, plaintiff filed a motion for an extension of time to file a sur-reply to defendants' reply. (ECF No. 92.) In this Circuit, courts are required to afford pro se litigants additional leniency. E.g., Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012); Watison v. Carter, 668 F.3d 1108, 1112 (9th Cir. 2012);11). "This leniency, however, does not extend to permitting sur-replies as a matter of course and the court is not generally inclined to permit sur-replies absent an articulation of good cause why such leave should be granted." Miller v. Soto, 2022 WL 3718308, at *1 (E.D. Cal. Aug. 29, 2022).

In the pending motion, plaintiff explains why he requires additional time to prepare a sur-reply. (ECF No. 92.) However, plaintiff does not specifically address why he wants to file sur-reply. (Id.) For this reason, this Court finds that plaintiff fails to show good cause to grant his motion for an extension of time to file a sur-reply.

Accordingly, IT IS HEREBY ORDERED that plaintiff's motion for an extension of time to file a sur-reply (ECF No. 92) is denied; and

IT IS HEREBY RECOMMENDED that:

1. Plaintiff's claim alleging that defendants used excessive force when they removed him from the holding cell and forced plaintiff to the new cell be dismissed for failing to state a potentially colorable claim for relief; and

2. Defendants' summary judgment motion (ECF No. 80) be granted as to plaintiff's claim alleging that defendants used excessive force when they slammed plaintiff to the ground and denied as to plaintiff's claim alleging that defendants used excessive force after they brought plaintiff to the ground.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  May 17, 2024

_____
CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

Dao846.sj

2